STATE OF NORTH CAROLINA v. CHARLES JOSEPH McBENNETT, JR.

No. COA07-1282

· (Filed 5 August 2008)

## Search and Seizure— motion to suppress—unlawful entry into hotel room by police officers

The trial court erred in a felonious possession of a Schedule II controlled substance (cocaine) and felonious possession of a Schedule VI controlled substance (marijuana) case by denying defendant's motion to suppress evidence discovered in defendant's hotel room, and the order denying the motion to suppress is reversed, because: (1) although defendant had a general expectation of privacy in the room subject to exceptions for the entry of hotel staff and their agents to perform their duties even to the extent of entering the room without his express consent if necessary to perform those duties, the police officers' entry into defendant's room violated his expectation of privacy; (2) although it may be true that hotel management was not acting as an agent of the government at the time of entry into defendant's hotel room, such a determination was irrelevant since the law enforcement officers actually participated in the entry into defendant's room and the discovery and seizure of the evidence sought to be suppressed; (3) it was not hotel management's inspection of the room that resulted in discovery of the evidence; (4) a governmental search conducted without a search warrant is per se unreasonable unless it falls within a recognized exception, the State has not argued that exigent circumstances required the officers' entry nor does the evidence show exigent circumstances, and the plain view exception cannot apply when the officers' entry into the room violated the Fourth Amendment; and (5) defendant did not consent to the search or waive his rights when he did not open

the door to his hotel room voluntarily, but rather was coerced by hotel management.

Appeal by defendant from order entered 30 July 2007 and judgment entered 25 September 2007 by Judge J. Marlene Hyatt in Haywood County Superior Court. Heard in the Court of Appeals 28 April 2008.

*Roy Cooper, Attorney General, by Derrick C. Mertz, Assistant Attorney General, and William B. Crumpler, Assistant Attorney General, for the State.*

*Bill J. Jones, Attorney at Law, P.A., by Bill Jones, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged in bills of indictment with felonious possession of a Schedule II controlled substance (cocaine), felonious possession of a Schedule VI controlled substance (marijuana), misdemeanor possession of a Schedule III controlled substance (hydrocodone), and misdemeanor possession of drug paraphernalia. He moved to suppress evidence seized by police officers from a room which he had rented at the Quality Inn hotel in Maggie Valley. The trial court heard evidence and entered an order denying the motion to suppress. After preserving his right to appeal the denial of his motion to suppress, defendant entered pleas of guilty to the two felony charges, and the State dismissed the two misdemeanor charges. Defendant appeals from a judgment imposing a suspended sentence and placing him on probation.

Defendant's appeal raises a single issue: whether the evidence discovered in defendant's hotel room was the product of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, and Article 1, Section 20 of the North Carolina Constitution. We hold that it was and reverse the order denying the motion to suppress.

The evidence offered at the suppression hearing tended to show that defendant checked into a room at the Quality Inn in Maggie Valley, North Carolina, on 12 August 2006 and arranged to stay at the hotel until 19 August, paying for the room in advance with his credit card. Defendant refused housekeeping services during his stay. On

the evening of 16 August 2006, defendant ordered room service. The waitress who delivered the room service reported to management that the room was in disarray.

Beth Reece owned the Quality Inn in Maggie Valley, and her stepson Chris Reece helped her manage the hotel, although he was not a paid employee. Upon receiving the report from the waitress on the morning of 17 August, Mr. Reece went to the room, knocked on the door, and when no one answered, he used the master key to unlock the door. The door opened only slightly before catching on the interior lock. Mr. Reece twice stated that he was "housekeeping" and asked defendant to open the door, and finally defendant responded that he did not need housekeeping. Mr. Reece then closed the door and went back to the office where he called Maggie Valley police and gave defendant's license plate number to Detective Archie Shuler. Detective Shuler told Mr. Reece to "[s]tay right where you are, we are on our way." Detective Shuler then informed Officer Jeff Mackey that:

> [H]e had received a report from Chris Reece stating that [defendant] was staying in a room at the Quality Inn and that he was familiar with [defendant], and . . . [Officer Mackey] asked him if he needed any assistance in going down there and speaking with [defendant], and [Detective Shuler] said just come on, go with me . . . .

Within five to ten minutes after Mr. Reece's call, Detective Shuler and Officer Mackey arrived at the hotel. Mr. Reece met with the officers and explained what had already transpired. Mr. Reece's plan was to try to gain access to the room, and the officers accompanied him. The parties did not discuss how they would try to gain access to the room. Mr. Reece knocked on the door to defendant's room several times, but no one answered. He opened the door with the master key, but the door caught on the interior lock. At that point, Officer Mackey stood in front of Mr. Reece, and Detective Shuler was at his side. Mr. Reece said twice, "This is the owner of the hotel, open up," but no one answered. At one point, Officer Mackey said, "Look, man, you just need to come to the door," but the officers did not recall ever identifying themselves as law enforcement. Then Mr. Reece said, "I'm going to count to ten. If you don't open up, we're busting the door down." Mr. Reece began counting, whereupon defendant said, "Hold on, I'm putting my pants on." Defendant came to the door and unlocked the interior lock; Officer Mackey then entered the room, followed by Mr. Reece and Detective Shuler. Upon entering the room, Officer Mackey saw marijuana and syringes on the dresser and a handgun on the bed.

He placed handcuffs on defendant within forty-five seconds after entering the room. Defendant was subsequently arrested for possession of the controlled substances and drug paraphernalia found inside the room. The officers had neither a search warrant nor an arrest warrant for defendant when they entered the room.

The trial court found facts generally consistent with the foregoing summary of the evidence and denied defendant's motion to suppress concluding that:

1. When a person engages a hotel room he gives implied or express permission to such persons as maids, janitors or repairman [sic] to enter his room in the performance of their duties.

2. Moreover, the owner of the hotel has not only apparent but actual authority to enter the room for some purposes, such as to view waste.

3. The only reason the officers were entering the room was because of the request of assistance from management of the hotel.

Defendant contends the trial court erred in concluding the officers' entry into the room was lawful.

"[A]n individual has both a state and federal constitutional right to freedom from unreasonable searches and seizures." *State v. Harris*, 145 N.C. App. 570, 580, 551 S.E.2d 499, 505-06 (2001) (citing U.S. Const. amend. IV.; N.C. Const. art. I, §§ 19, 20). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94 (1984); *accord State v. Nance*, 149 N.C. App. 734, 738-39, 562 S.E.2d 557, 561 (2002). "The fourth amendment as applied to the states through the fourteenth amendment protects citizens from unlawful searches and seizures committed by the government or its agents. This protection does not extend to evidence secured by private searches, even if conducted illegally." *State v. Sanders*, 327 N.C. 319, 331, 395 S.E.2d 412, 420 (1990), *cert. denied*, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991). Search and seizure by the government or its agents is unlawful if it is unreasonable, and:

The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circum-

stances. Hence, when the State seeks to admit evidence discovered by way of a warrantless search in a criminal prosecution, it must first show how the former intrusion was exempted from the general constitutional demand for a warrant.

*State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982) (citations omitted).

Application of these fundamental principles to the facts of this case require us to consider four questions. First, did the entry into defendant's hotel room constitute a "search"? Next, was the discovery of the evidence in the room the result of governmental action? If a governmental search was responsible for the discovery of the evidence, was the search and seizure reasonable under any recognized exception to the general requirement for a search warrant? Finally, did defendant at any point waive his right to Fourth Amendment protection?

## I. Search

As noted above, whether a search has occurred depends on whether an individual's reasonable expectation of privacy was infringed. *Jacobsen*, 466 U.S. at 113, 80 L. Ed. 2d at 94; *Nance*, 149 N.C. App. at 738-39, 562 S.E.2d at 561. Status as an overnight guest creates a reasonable expectation of privacy in the home or dwelling where the guest is staying. *Minnesota v. Olson*, 495 U.S. 91, 96-97, 109 L. Ed. 2d 85, 93 (1990). "No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. California*, 376 U.S. 483, 490, 11 L. Ed. 2d 856, 861 (1964) (citation omitted). Although an individual has a protected right to privacy in a hotel room, "[t]he law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors or repairmen in the performance of their duties." *United States v. Jeffers*, 342 U.S. 48, 51, 96 L. Ed. 59, 64 (1951); *accord Stoner*, 376 U.S. at 489, 11 L. Ed. 2d at 861.

Defendant argues that he gave neither express nor implied consent to hotel management or staff to enter his room. To the contrary, defendant argues that by declining housekeeping services, he expressly did not consent to Mr. Reece's entry into the room. We believe, however, that as an implied condition of his staying at the hotel, he gave implied consent for agents of the hotel to perform their duties, even to the extent of entering the room without his express

consent if necessary to perform those duties. This must be so, for to conclude that defendant's stay in the hotel could render the owner powerless to perform those managerial duties and obligations required by law and relative to the safety and comfort of other guests at the hotel would defy logic. Accordingly, we conclude that defendant in this case had a general expectation of privacy in the room, subject to exceptions for the entry of hotel staff and their agents to perform their duties.

Furthermore, Mr. Reece's conduct was within the duties of hotel management. "An innkeeper . . . is required to exercise due care to keep his premises in a reasonably safe condition and to warn his guests of any hidden peril." *Page v. Sloan*, 281 N.C. 697, 702, 190 S.E.2d 189, 192 (1972). A proprietor of a hotel has a duty to safeguard his guests from injuries caused by criminal acts of third persons. *Murrow v. Daniels*, 321 N.C. 494, 501, 364 S.E.2d 392, 397 (1988); *see also Nelson v. Freeland*, 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998) (abolishing the distinction between invitees and licensees). "Liability for injuries may arise from failure of the proprietor to exercise reasonable care to discover that [criminal] acts by third persons are occurring . . . coupled with failure to provide reasonable means to protect his patrons from harm or give a warning adequate to enable patrons to avoid harm." *Murrow*, 321 N.C at 501, 364 S.E.2d at 397. Consequently, Mr. Reece had a duty to keep his hotel in a reasonably safe condition and to exercise reasonable care to discover criminal acts that might cause harm to other guests.

Therefore, we conclude, as did the trial court, that the implied permission which defendant gave to agents of the hotel to enter the room in the performance of their duties clearly included the permission for Mr. Reece to inspect the room for damage or for conditions which might pose a risk of harm to other guests. However, this implied permission to enter was limited to agents of the hotel in the performance of their duties and was an exception to defendant's general expectation of privacy which applied to others, including law enforcement, who were not performing duties on behalf of the hotel.[1] Because the officers' entry into defendant's room violated his expectation of privacy, we conclude their entry amounted to a search, although Mr. Reece's entry did not.

---

1. We note that the officers' duty to keep the peace, discussed later in this opinion, is not a duty owed by the hotel which is being performed by law enforcement; rather, it is a duty owed by law enforcement to the general public which, in this case, includes the hotel owner. *See State v. Gaines*, 332 N.C. 461, 472, 421 S.E.2d 569, 574 (1992) (recognizing law enforcement officers' common law duty to keep the peace).

## II. Governmental Actor

Defendant argues that the evidence was discovered through the activity of law enforcement, which cannot be negated by Mr. Reece's involvement in gaining entry to defendant's room. The State argues that the trial court correctly attributed the discovery of the evidence to Mr. Reece's entry into the room and characterizes the activities as a private search. The State's characterization is erroneous from two standpoints. First, as discussed in the previous section, Mr. Reece's entry into defendant's hotel room was not a "search" for purposes of the Fourth Amendment. Second, the discovery of the evidence did not result from Mr. Reece's private activity as an agent of the hotel inspecting the room, but rather from the officers' entry into the room.

The State cites *State v. Sanders*, 327 N.C. at 334, 395 S.E.2d at 422, which points out that a determination of whether a private person acts as an agent of the state when conducting a private search requires a "totality of the circumstances" analysis. "Factors to be given special consideration include the citizen's motivation for the search or seizure, the degree of governmental involvement, such as advice, encouragement, knowledge about the nature of the citizen's activities, and the legality of the conduct encouraged by the police." *Id.* The State contends that under this test, Mr. Reece was not acting as an agent of the government and instead was acting as a private citizen. Furthermore, as a private actor, the Fourth Amendment does not apply to his actions and would not render the evidence inadmissible. *Id.* at 331, 395 S.E.2d at 420. Although it may be true that Mr. Reece was not acting as an agent of the government, such a determination is irrelevant because the law enforcement officers in this case actually participated in the entry into defendant's room and the discovery and seizure of the evidence sought to be suppressed. Regardless of whether the Fourth Amendment applies to Mr. Reece's activity, its protections unquestionably apply to the conduct of the officers. *See id.*

Furthermore, it was not Mr. Reece's inspection of the room that resulted in the discovery of the evidence. Officer Mackey entered the room first, and spotted the evidence on the dresser and the bed. He testified that upon entering the room:

A[.] Well, I was talking to [defendant] and just explaining we're just going to come in, look around, make sure everything is okay, and then you saw the marijuana on the dresser, and I pointed that

out to . . . Detective Shuler, and then I turned to the right in between the beds, and that's when I saw a handgun laying there on the bed.

Q[.] What happened then?

A[.] At that point I turned around, I pointed at the marijuana, I pointed at the gun, and that's when I told [defendant] that we needed to put some handcuffs on him . . . .

Detective Shuler's testimony corroborated Officer Mackey's testimony of what transpired when they entered the room. Governmental conduct clearly resulted in the discovery of the evidence, not Mr. Reece's activity as a private citizen.

### III. Exceptions to the Warrant Requirement

Because the governmental search was not conducted pursuant to a warrant, it is *per se* unreasonable unless it falls within a recognized exception. *See Cooke*, 306 N.C. at 135, 291 S.E.2d at 620. The State argues that the warrantless search was reasonable under the plain view exception to the Fourth Amendment because the officers' entry into defendant's room was a lawful exercise of their duty to keep the peace. We reject this argument.

The "plain view" exception involves three elements:

[I]n *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971), the U.S. Supreme Court held that the police may seize without a warrant the instrumentalities, fruits, or evidence of crime which is in "plain view" if three requirements are met. First, the initial intrusion which brings the evidence into plain view must be lawful. *Id.* at 465, 29 L. Ed. 2d at 582. Second, the discovery of the incriminating evidence must be inadvertent. *Id.* at 469, 29 L. Ed. 2d at 585. Third, it must be immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are otherwise subject to seizure. *Id.* at 466, 29 L. Ed. 2d at 583.

*State v. Williams*, 315 N.C. 310, 317, 338 S.E.2d 75, 80 (1986). With regard to the first requirement that the intrusion be lawful, "[i]t is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136, 110 L. Ed. 2d 112, 123 (1990).

The officers' entry in this case was not lawful. Although "[a]t common law, a law enforcement officer had the duty to keep the peace at all times," *Gaines*, 332 N.C. at 472, 421 S.E.2d at 574, such a duty cannot diminish defendant's protected right to privacy. We revisit the U.S. Supreme Court's language from *Stoner*: "No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. *That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel*." *Stoner*, 376 U.S. at 490, 11 L. Ed. 2d at 861 (emphasis added) (citations omitted). Thus, a hotel manager's choices about when and how to exercise his rights and perform his duties, regardless of whether they may cause a breach of the peace, cannot strip the occupant of his right to privacy or excuse law enforcement from complying with the requirements of the Fourth Amendment. "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653 (1980); *see also Stoner*, 376 U.S. at 490, 11 L. Ed. 2d at 861 (finding that the entry into a hotel room is analogous to the entry into a house). The State has not argued that exigent circumstances required the officers' entry, nor does the evidence of record show exigent circumstances. Without such circumstances, the officers' entry into the room violated the Fourth Amendment, and the plain view exception cannot apply. *See Horton*, 496 U.S. at 136, 110 L. Ed. 2d at 123. Accordingly, we conclude that the search was unreasonable and violated defendant's rights under the Fourth Amendment.

## IV. Waiver

The last question we must consider is whether defendant at any time waived his Fourth Amendment rights. We first note that the hotel owner or staff could not consent on defendant's behalf to a search of his room. *Stoner*, 376 U.S. at 489, 11 L. Ed. 2d at 860. The State contends that defendant waived his rights directly by consenting to the search when he unlocked the interior lock and opened the door after Mr. Reece threatened to break down the door. First, it is unclear whether defendant even knew that law enforcement was present because the officers did not identify themselves as such. Regardless of that fact, defendant clearly did not consent to entry into his room because he did not open the door voluntarily but rather under the coercion of Mr. Reece.

[T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting "consent" would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 36 L. Ed. 2d 854, 863 (1973); *accord State v. Glaze*, 24 N.C. App. 60, 62, 210 S.E.2d 124, 126 (1974). In the case before us, Mr. Reece's threat was explicit, and it clearly coerced defendant to open the door; therefore, we conclude defendant did not consent to the search or waive his rights.

Reversed and remanded.

Judges BRYANT and ARROWOOD concur.