IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-913

No. COA22-160

Filed 29 December 2022

Durham County, No. 18 CVS 3806

ANTHONY TERRY, Plaintiff,

v.

PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INCORPORATED, and WILLIAM V. LUCAS, Defendant.

Appeal by Plaintiff from order entered 21 September 2021 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 10 August 2022.

> *Poyner Spruill LLP, by Steven B. Epstein, and Hendren Redwine & Malone, PLLC, by J. Michael Malone, for the Plaintiff-Appellant.*
>
> *Haywood, Denny & Miller LLP, by Robert E. Levin, for the Defendant-Appellee.*

JACKSON, Judge.

¶ 1       Anthony Terry ("Plaintiff") appeals from the trial court's order granting summary judgment in favor William V. Lucas ("Defendant"). For the reasons detailed below, we reverse the order of the trial court.

## I.    Background

¶ 2       On 15 September 2006, Plaintiff's wife, Stephanie Terry, entered into a written lease with Defendant for the rental of a three-bedroom, one-bathroom residential

property located at 1007 Colfax Street, in Durham, North Carolina. Mrs. Terry, Plaintiff, and their two sons moved into the home on or around that date. The home contained a crawl space where the water heater and furnace were located. The furnace was located under the home's single bathroom.

¶ 3 In January 2017, Plaintiff and his family were on their way back from taking their oldest son to college when Mrs. Terry received a phone call from her brother, Charles Jones, to inform her that Mr. Jones saw a Public Service Company of North Carolina ("PSNC")[1] truck and fire truck at Plaintiff's home. Mr. Jones also told Mrs. Terry that Plaintiff's neighbor reported smelling natural gas near Plaintiff's home. When Plaintiff and Mrs. Terry returned from their trip there was no one at their home and they received no follow-up information from PSNC, Defendant, or the fire department.

¶ 4 In March 2017, Plaintiff smelled natural gas while in the front yard of his home. In the same month, a neighbor informed Plaintiff that she smelled natural gas around Plaintiff's home. In mid-March 2017, the fire department and PSNC technicians came to Plaintiff's house after a report from someone in the neighborhood about the smell of gas. PSNC technicians used what Plaintiff identified as "leak detectors" around the manhole covers near Plaintiff's house in addition to around the

---

[1] PSNC has been dismissed from this suit and is no longer a party.

meter at Plaintiff's home. A PSNC technician informed Plaintiff at that time that they did not identify any leaks around the fitting of the meter.

¶ 5     On 13 April 2017, Plaintiff and Mrs. Terry were at home when Plaintiff walked into the bathroom at approximately 6:00 p.m. Immediately as Plaintiff turned on the light, there was an explosion. This explosion caused Plaintiff to catch on fire, resulting in burns over much of his body. Plaintiff was in a coma at the burn center at the University of North Carolina at Chapel Hill Hospital from April 2017 until mid-August 2017. On 21 September 2017, Plaintiff was discharged from the hospital. Following his release, Plaintiff returned to the hospital on a bi-weekly, then monthly basis until he was fully released from care at the end of 2018. Plaintiff continues to suffer constant pain in his legs and feet, nerve damage in his left hand, and is bed-bound for most of his daily life.

¶ 6     After the explosion, the floor of Plaintiff's bathroom was removed for replacement, revealing a severely rusted and corroded pipe leading from the gas meter to the home's furnace. Defendant had not conducted an inspection of the home's furnace, the pipes leading from the gas meter, or any other part of the property since the time that Plaintiff and his family moved into the home in 2005. Defendant did conduct a move-out inspection after the prior residents left and before Plaintiff and his family moved in; however, that inspection did not involve Defendant going in the crawl space to examine the furnace or the pipes leading from the gas meter.

¶ 7 On 18 September 2018, Plaintiff initiated this action in Durham County Superior Court asserting claims of negligence against PSNC. On 2 April 2019, Plaintiff filed his First Amended Complaint, with the consent of PSNC, adding Defendant and asserting claims of negligence, violation of the North Carolina Residential Rental Agreements Act ("RRAA"), and breach of warranty of habitability. On 13 July 2020, Plaintiff filed his Second Amended Complaint, alleging violation of North Carolina's RRAA, breach of warranty of habitability, negligence, and negligence *per se* against Defendant. Plaintiff filed a notice of voluntary dismissal of PSNC on 31 August 2021.

¶ 8 On 14 July 2021, Defendant filed a motion for summary judgment. Defendant's motion came on for hearing on 20 September 2021, before the Honorable Orlando F. Hudson, Jr., in Durham County Superior Court. By order dated 21 September 2021, the trial court granted Defendant's motion for summary judgment.

¶ 9 Plaintiff timely filed and served written notice of appeal on 7 October 2021.

## II. Analysis

¶ 10 Plaintiff makes four arguments on appeal: (1) genuine issues of material fact preclude summary judgment in Defendant's favor on Plaintiff's common law negligence claim; (2) genuine issues of material fact preclude summary judgment in Defendant's favor on Plaintiff's claim for violation of the RRAA; (3) genuine issues of material fact preclude summary judgment in Defendant's favor on Plaintiff's

negligence *per se* claim; and (4) genuine issues of material fact preclude summary judgment in Defendant's favor on Plaintiff's breach of the implied warranty of habitability claim.

We hold that Plaintiff has made a sufficient forecast of admissible evidence on these claims, and that summary judgment in Defendant's favor was therefore improper.

## A. Standard of Review

"In a ruling for summary judgment, the court does not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *Ragland v. Moore*, 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980). The movant bears the burden of showing "that there is no triable issue of fact and that he is entitled to judgment as a matter of law." *Id.* "All inferences of fact must be drawn against the movant and in favor of the nonmovant." *Lord v. Beerman*, 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008). "[S]ummary judgment is rarely appropriate in negligence cases." *Nick v. Baker*, 125 N.C. App. 568, 571, 481 S.E.2d 412, 414 (1997). A trial court's grant of summary judgment is reviewed *de novo* on appeal. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App 561, 563, 668 S.E.2d 349, 351 (2008). Under *de novo* review, this Court considers the matter anew without deference to the trial court's rulings. *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007).

## B. Common Law Negligence

¶ 13    Plaintiff first argues that there are triable issues of fact as to his common law negligence claims because there was evidence that Defendant had constructive notice of the alleged hazardous condition and was negligent in failing to warn of or repair the condition. We agree.

¶ 14    Under the ordinary rules of negligence, a landlord may be held liable for personal injury to his tenants if he "knew, *or in the exercise of ordinary care should have known*" that the defect or unsafe condition exists but fails to correct it. *Brooks v. Francis*, 57 N.C. App. 556, 560, 291 S.E.2d 889, 891 (1982) (emphasis added). Whether a party exercised ordinary care is typically a question for the jury. *See Green v. Wellons, Inc.*, 52 N.C. App. 529, 534, 279 S.E.2d 37, 41 (1981) (finding that summary judgment was inappropriate where the "defendant's own evidentiary material contains testimony from which a jury could find that the unsafe condition had existed for such time that [the] defendant should have known of it.").

¶ 15    Here, evidence was introduced that Defendant had not performed any inspection of Plaintiff's property during the entirety of Plaintiff's lease—a period of more than 11 years. Defendant also testified at his deposition that, at the time the tenants prior to Plaintiff moved out of the property, he conducted a "move out inspection," but that this inspection did not involve an examination of the furnace or pipes located in the crawl space under the bathroom. Further, in the summer of 2016, Defendant saw debris in Plaintiff's backyard and became upset at how the property

was being maintained. However, despite his concerns, Defendant did not conduct inspections of any other portions of the property to make sure they were being appropriately maintained.

¶ 16    Defendant argues that Plaintiff is seeking for us to impose a duty to inspect on landlords, and further that Plaintiff has provided no evidence showing that Defendant breached any duty of care owed by Defendant because Plaintiff never informed Defendant of a potential gas leak. We disagree.

¶ 17    Our holding here is not that there is a blanket duty to "inspect the living quarters or crawlspace of a tenant." Rather, we are merely reaffirming the existing and repeatedly recognized common law duty that landlords must "use reasonable care in the inspection and maintenance of leased property." *Bradley v. Wachovia Bank & Trust Co., N.A.*, 90 N.C. App. 581, 585, 369 S.E.2d 86, 88 (1988). In this matter, there remains a question of fact for the jury as to whether Defendant's choice to not inspect any part of Plaintiff's property, including the natural gas heating system, or provide any regular maintenance of the natural gas heating system and related pipes was "reasonable care."

## C. Violation of the RRAA

¶ 18    Plaintiff also argues that the trial court's grant of summary judgment on his claim for violation of the RRAA was error because there is evidence that Defendant violated the statutory duty of care contained in the RRAA, specifically that Defendant

failed to maintain the gas furnace and associated piping in a manner that was safe for tenant occupancy. We agree.

¶ 19    The RRAA creates a statutory duty to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42-42(a)(2) (2021); *Martin v. Kilauea Props., LLC*, 214 N.C. App. 185, 188, 715 S.E.2d 210, 212 (2011). A breach of this duty is a breach of the implied warranty of habitability, discussed *infra*. In addition, "a violation of the duty to maintain the premises in a fit and habitable condition is evidence of negligence." *Brooks*, 57 N.C. App. at 559, 291 S.E.2d at 891 (cleaned up).

¶ 20    Just as the evidence presented by Defendant and Plaintiff creates a question of fact about whether Defendant's actions constituted "reasonable care," that same evidence presents a jury issue about whether Defendant did "whatever necessary" to maintain the premises in a fit and habitable condition.

## D. Negligence *Per Se*

¶ 21    Plaintiff next asserts that the trial court improperly granted summary judgment in Defendant's favor on Plaintiff's negligence *per se* claim. Plaintiff contends that the Housing Code of the City of Durham ("the Housing Code") is a statute enacted to protect the public and promote the general welfare of the public and that a triable issue of material fact existed about whether Defendant violated the Housing Code. We agree.

¶ 22    As a threshold matter, we reject Defendant's argument that the Housing Code was not properly submitted to the trial court and that we may not consider them on appeal. The Housing Code complies with the requirements of N.C. Gen. Stat. §§ 160A-79(b)(1) and 160A-77 and are therefore properly before us.

¶ 23    The violation of a public safety statue or ordinance is negligence *per se* unless the statute states otherwise. *Hart v. Ivey*, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992). However, not all statutes or ordinances with general safety implications are subject to this rule. *Mosteller v. Duke Energy Corp.*, 207 N.C. App. 1, 11, 698 S.E.2d 424, 432 (2010). For a safety regulation to be adopted as a standard of care, the purpose of the regulation must be at least in part:

> (a)    To protect a class of persons which includes the one whose interest is invaded,
>
> (b)    To protect the particular interest which is invaded,
>
> (c)    To protect that interest against the kind of harm which resulted, and
>
> (d)    To protect that interest against the particular hazard from which the harm resulted.

*Id.* (cleaned up). If the violation of a safety statute or regulation is punishable as a criminal offense, this weighs in favor of the violation constituting negligence *per se* in a civil trial. *Id.* at 12, 698 S.E.2d at 432.

¶ 24    In *Jackson v. Housing Authority of High Point*, our Court held that a local ordinance regulating the maintenance of heater flues had an "obvious purpose" of protecting the lives and limbs of residents of affected buildings and was therefore a public safety ordinance. 73 N.C. App. 363, 369, 326 S.E.2d 295, 299 (1985). As the legislature had not provided otherwise, a violation of that ordinance constituted negligence *per se*. *Id.*

¶ 25    The Housing Code is a public safety statute, a violation of which would establish negligence *per se*. According to the legislative findings of the Housing Code, the Durham City Council found that:

> [T]here exists in the city, housing which is unfit for human habitation due to dilapidation, defects increasing the hazards of fire, accidents or other calamities, lack of ventilation, light or sanitary facilities and other conditions rendering such housing unsafe or unsanitary or dangerous or detrimental to the health or safety or otherwise inimical to the welfare of the residents of the city and that a public necessity exists to exercise the police powers of the city pursuant to G.S. 160D-441 et seq., to cause the repair and rehabilitation, closing or demolishing of such housing in the manner herein provided.

Durham, N.C., Ord. No. 14271, § 2, 6-4-2012. The sections that Plaintiff alleges were violated by Defendant are 10-234(e)(2), 10-234(g)(7), 10-234(h)(1), and 10-234(j)(1). Section 10-234(e)(2) provides:

> (e)     Heating.

> (2)     Central heating units.

a.      Every central heating unit shall:

1.      Have every duct, pipe or tube free of leaks and functioning properly to provide an adequate amount of heat or hot water to the intended place of delivery;

2.      Be provided with proper seals between sections of hot air furnaces to prevent the escape of noxious fumes and gases into heat ducts;

3.      Be properly connected to an electric circuit of adequate capacity in an approved manner if electrical power is required; and

4.      Be provided with all required automatic or safety devices and be installed and operated in the manner required by the laws, ordinances and regulation of the city.

b.      All liquid fuel used to operate any central heating unit shall be stored in accordance with the city's fire prevention and building codes;

c.      All gas and oil heating equipment installed on the premises shall be listed by a testing laboratory and shall be installed, including proper ventilation, in accordance with the applicable provisions of the North Carolina State Building Code.

Section 10-234(g)(7) provides:

(g)      Structural standards.

(7)      Floors.

a.      Broken, overloaded, excessively decayed or sagging structural floor members are prohibited.

b.      Structural floor members shall be supported on foundation walls and piers that are not deteriorated and perform the function for which they were intended.

c.      Floor joists shall be supported on structural bearing members and shall not be made structurally unsound by deterioration.

d.      Flooring shall be reasonably smooth, not rotten or worn through, and without holes or excessive cracks which permit outside air to penetrate rooms.

e.      Flooring shall not be loose.

f.      Split, splintered, or badly worn floor boards shall be repaired or replaced.

g.      Floors in contact with soil shall be paved either with concrete not less than three inches thick or with masonry not less than four inches thick, which shall be sealed tightly to the foundation walls.

h.      All laundry and kitchen floors shall be constructed and maintained so as to be impervious to water.

Section 10-234(h)(1) provides:

(h)     Property maintenance.

(1)     Structures.

a.      Floors, walls, ceilings and fixtures shall be maintained in a clean and sanitary condition.

b.      Every dwelling shall be maintained so as to prevent persistent excessive dampness or moisture on interior or exterior surfaces. Building materials discolored or deteriorated by mold or mildew or conditions that may contribute to mold, shall be cleaned, dried, and repaired.

Section 10-234(j)(1) provides:

> (j)     Plumbing Standards.
>
> (1)     General.
>
> a.     Every dwelling unit shall be connected to a city water supply and/or sanitary sewer system unless the dwelling unit is connected to a county approved water supply and/or sanitary sewer system.
>
> b.     All plumbing, water closets and other plumbing fixtures in every dwelling or dwelling unit shall be installed and maintained in good working condition and repair and in accordance with the requirements of this article and the applicable portions of the North Carolina State Building Code.
>
> c.     All plumbing shall be so maintained and used as to prevent contamination of the water supply through cross connections or back siphoning.
>
> d.     All fixtures, piping and other plumbing system components shall be in proper working condition with no leaks.
>
> e.     No fixtures shall be cracked, broken or badly chipped.
>
> f.     All water piping shall be protected from freezing by proper installation in enclosed or concealed areas or by such other means as approved by a city plumbing inspector.
>
> g.     At least one three-inch minimum size main plumbing vent shall be properly installed for each building.

     h.     Soil and water lines shall be properly supported with no broken or leaking lines.

     i.     Access to all bathrooms shall be through a weather tight and heated area.

     j.     Every dwelling unit shall contain within a room which affords privacy, a bathtub or shower in good working condition which shall be properly connected to both hot and cold water lines and to the public sanitary sewer or to an approved sewage disposal system. The floor of such room shall be made impervious to water to prevent structural deterioration and any development of unsanitary conditions.

     k.     Clean nonabsorbent water-resistant material on bathroom wall surfaces shall extend at least 48 inches above a bathtub and 72 inches above the floor of a shower stall. Such materials on walls shall form a watertight joint with the bathtub or shower.

While the version of the Housing Code in effect at the time of Plaintiff's initiation of this suit provided that a violation of the Housing Code constituted a misdemeanor and was punishable by a maximum fine of $500.00 and 30 days in jail, Durham, N.C., Ord. No. 14271, § 2, 6-4-2012, this section has since been amended to remove criminal liability for a violation of the Housing Code, Durham, N.C., Ord. No. 15982, § 17, 8-1-2022.

The purpose of the Housing Code is explicitly to protect the occupants of affected buildings. The "welfare of the residents of the city" is paramount in the legislative findings. *See* Durham, N.C., Ord. No. 14271, § 2, 6-4-2012. Further, the

relevant sections for this action regulate heating units, general structural standards, flooring standards, and plumbing—each of which is clearly designed to prevent structural breakdowns that could result in hazardous conditions for inhabitants. The plain language reveals that the Housing Code is designed to protect inhabitants, such as Plaintiff, of these dwellings, and prevent against injuries that may be caused by failure to maintain the required minimum standards.

¶ 28        Defendant does not appear to dispute that the Housing Code is a public safety statute or ordinance, but instead contests the existence of any evidence of a violation or notice of a violation. Defendant relies on our Court's decision in *Olympic Prods. Co. v. Roof Sys.*, 88 N.C. App. 315, 363 S.E.2d 367 (1988), in support of his contention that he may not be found negligent *per se* for a violation of the Housing Code in the absence of Plaintiff notifying him of a defect.

¶ 29        In *Olympic Products*, the code at issue was the North Carolina Building Code, not a city housing code. *Id.* at 326, 363 S.E.2d at 374. Our Supreme Court has enumerated specific conditions that must be satisfied for a building owner to be found negligent *per se* for a violation of the state Building Code: "(1) the owner knew or should have known of the Code violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation proximately caused injury or damage." *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 415, 395 S.E.2d 112, 114 (1990). Neither

this Court nor our Supreme Court has extended these requirements to negligence *per se* in the context of a municipal housing code, and we decline to do so here.

¶ 30        There was a sufficient forecast of admissible evidence that Defendant violated the Housing Code such that summary judgment was improper. There was substantial testimony from both Plaintiff's and Defendant's witness depositions about the severely deteriorated nature of the pipe from which the natural gas leaked. Sam Pendergrass, identified by Plaintiff as a metallurgist expert retained to examine the pipe, testified at his deposition that "[a]s of April 13, 2017, the pipe was severely rusted and corroded and had several holes through which natural gas could have escaped." When asked his opinion on the source of the corrosion on the pipe, Mr. Pendergrass responded that it was from moisture leaking on the pipe. Mr. Pendergrass also opined that it would take approximately seven years for the pipe to have corroded to the level that it was at when he examined it.

¶ 31        Daryl Greenberg, identified by Plaintiff as an expert with a background in real estate brokering, property management, and property management consulting, testified at his deposition that "[i]t would appear that the plumbing standards were not being maintained because they hadn't been inspected, and they had not been functioning properly as the leaks that were occurring under the house apparently were the causation of the rusted gas line."

¶ 32        Defendant questions the credibility of Plaintiff's experts and argues that their testimony should be disregarded. Defendant supports this contention by alleging that Mr. Greenberg's testimony was disregarded in an unrelated matter and that both he and Mr. Pendergrass attempt to create a duty not provided for by law. We are not persuaded.

¶ 33        "Expert testimony is admissible as long as the witness can be helpful to the jury because of his superior knowledge." *Federal Paper Bd. Co. v. Kamyr, Inc.*, 101 N.C. App. 329, 334, 399 S.E.2d 411, 415 (1991). Further, "[q]uestions of expert credibility may not be resolved by summary judgment." *Id.*; *See also City of Thomasville v. Lease-Afex, Inc,* 300 N.C. 651, 657, 268 S.E.2d 190, 195 (1980) (expert credibility questions should be tested by the trier of fact). In this case, the record shows that Mr. Greenberg and Mr. Pendergrass are sufficiently knowledgeable to express an opinion that may be helpful to the jury, particularly in light of the forgiving summary judgment standard.

¶ 34        Defendant testified at his deposition that he viewed the pipe after the explosion and that its condition was "pretty bad." Defendant also conceded that, while he had not read and was not aware of the Housing Code, he agreed that a landlord should maintain their rental property in compliance with the Code. Defendant agreed that heating and plumbing units degrade over time and need to be maintained and

repaired, but also testified that he had not performed an inspection of Plaintiff's property in the 11 years that they had been leasing it.

This forecast of evidence, viewed in the light most favorable to Plaintiff, supports a finding of negligence *per se*. Summary judgment in favor of Defendant was therefore inappropriate on Plaintiff's negligence *per se* claim.

### E. Breach of Implied Warranty of Habitability

Plaintiff's final argument is that the trial court improperly granted summary judgment in Defendant's favor on Plaintiff's breach of implied warranty of habitability claim because there is evidence supporting Plaintiff's contention that the defective gas pipe was observable upon reasonable inspection by Defendant, and that it violated the Durham Housing Code. Again, we agree.

The RRAA imposes certain duties on landlords and requires them to provide "fit premises." N.C. Gen. Stat. § 42-42(a)(1)-(4) (2021). Specifically, the RRAA mandates that:

> (a) The Landlord shall:
>
> (1) Comply with the current applicable building and housing codes[] . . . to the extent required by the operation of such codes[.]
>
> (2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.
>
> (3) Keep all common areas of the premises in safe condition.

> (4)    Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be provided by the landlord provided that notification of needed repairs is made to the landlord in writing by the tenant, except in emergency situations.

*Id.*

"The RRAA provides an affirmative cause of action to a tenant for recovery of rent due to a landlord's breach of the implied warranty of habitability." *Stikeleather Realty & Invs. Co. v. Broadway*, 242 N.C. App. 507, 516, 775 S.E.2d 373, 378 (2015).

Defendant contends that summary judgment was appropriate as Plaintiff did not forecast any evidence as to when the property became unfit. Further, Defendant asserts that there is no evidence that Defendant knew or had reason to know of any defect on the property and can therefore not be liable for breach of the implied warranty of habitability. We disagree.

While Defendant is correct that N.C. Gen. Stat. § 42-42(a)(4) requires written notification of defects in electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities supplied or required to be supplied by the landlord, we have held that such written notification is not required "if the repairs are necessary to put the premises in fit and habitable condition." *Surratt v. Newton*, 99 N.C. App. 396, 405, 393 S.E.2d 554, 559 (1990). The question of whether the

conditions requiring repairs render the premises in an unfit and uninhabitable condition is a question of fact for the jury, and therefore is inappropriate for disposition through summary judgment. *See id.* (where the jury found that "the conditions requiring repairs rendered the premises in unfit and uninhabitable condition," no written notice was required of those conditions).

¶ 40        Further, Plaintiff presented sufficient evidence to show that Defendant failed to comply with N.C. Gen. Stat. §§ 42-42(a)(1) and (2), neither of which contain a written notice requirement. As discussed *supra*, there was deposition testimony offered by Plaintiff's experts and by Defendant himself that the residence was not in compliance with the Housing Code, a violation of N.C. Gen. Stat. § 42-42(a)(1).

¶ 41        Defendant also testified that he had undertaken no inspection of the premises in the over 11 years that Plaintiff and his family lived there. N.C. Gen. Stat. § 42-42(a)(2) places an affirmative obligation on landlords to "do whatever is necessary to put and keep the premises in a fit and habitable condition." Defendant is correct that the RRAA contains no mandate that inspections be conducted on any set interval. However, it remains a question for the jury whether failing to conduct any inspection of a residential property for over a decade is doing "whatever is necessary" to maintain the premises in compliance with the RRAA.

¶ 42        Our dissenting colleague theorizes that our decision will potentially allow law enforcement to "enter the homes of tenants to observe inspections by a landlord which

may reveal contraband." While we respect our colleague's concern, we do not share it in this matter. This opinion does not modify, or even touch on, the existing framework for searches of and seizures within rental properties. The Supreme Court of the United States has held that law enforcement may not search a tenant's home based only on the consent of the landlord. *Chapman v. United States*, 365 U.S. 610, 616-17 (1961) ("[S]earch and seizure without a warrant would reduce the Fourth Amendment to a nullity and leave tenants' homes secure only in the discretion of landlords."). We have affirmed this principle, holding that:

> A law enforcement officer may conduct a valid search without a warrant if consent to the search is given "by a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of premises." G.S. 15A-222(3). A tenant in possession of the premises is such a person.

*State v. Reagan*, 35 N.C. App. 140, 142, 240 S.E.2d 805, 807 (1978).

¶ 43    We have similarly held, in the context of a hotel room rental, that even where hotel management has a duty to exercise reasonable care in keeping the premises safe, a duty which may include an obligation to inspect a room for damages that may harm other guests, the exercise of that duty does not "excuse law enforcement from complying with the requirements of the Fourth Amendment." *State v. McBennett*, 191 N.C. App. 734, 742, 664 S.E.2d 51, 57 (2008). In *McBennett*, we held that law enforcements' warrantless entry into an occupied hotel room was unlawful, even

where the officers were accompanying hotel management in the exercise of their duties. *Id.* "[T]his implied permission to enter was limited to agents of the hotel in the performance of their duties and was an exception to [the] defendant's general expectations of privacy which applied to others, including law enforcement, who were not performing duties on behalf of the hotel." *Id.* at 739, 664 S.E.2d at 55-56. In so holding we noted that the rights of hotel tenants are analogous to the rights of the tenants of a house. *Id.* at 742, 664 S.E.2d at 57.

¶ 44 In this case, the lease between Plaintiff and Defendant already allows Defendant "to enter and inspect said premises at any and all reasonable times." As we have stated above, our decision does not create a blanket duty for landlords to inspect their rental premises; rather, we hold that it is a question for the jury as to whether Defendant's failure, over the course of 11 years, to exercise the right to inspect that he gave to himself in his lease with Plaintiff was reasonable and in compliance with the already existing statutory and common law framework for maintenance of rental properties.

### III.    Conclusion

¶ 45 For the aforementioned reasons, we reverse the trial court's grant of summary judgment in Defendant's favor and remand the case for further proceedings.

REVERSED AND REMANDED.

Judge MURPHY concurs.

Judge CARPENTER dissents by separate opinion.

No. COA22-160– *Terry v. Pub. Serv. Co. of N.C., Inc.*

CARPENTER, Judge, dissenting.

The majority holds "Plaintiff has made a sufficient forecast of admissible evidence" on his claims of common law negligence, violation of the Residential Rental Agreements Act (the "RRAA"), negligence *per se*, and breach of implied warranty of habitability. Accordingly, the majority reversed and remanded the case to the trial court.

Because Plaintiff failed to forecast evidence showing that Defendant owed a duty to Plaintiff and that Defendant was on notice of dangerous conditions in the home, I disagree and respectfully dissent. For the reasons discussed below, I would hold the trial court did not err in granting Defendant's motion for summary judgment and would thus affirm the trial court's order granting summary judgment in favor of Defendant.

## I. Standard of Review

This Court reviews the grant of summary judgment to determine

> whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. Summary judgment is appropriate when viewed in the light most favorable to the non-movant, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

*S.B. Simmons Landscaping & Excavating, Inc. v. Boggs*, 192 N.C. App. 155, 164, 665 S.E.2d 147, 152 (2008) (citations omitted); *see also* N.C. Gen. Stat. § 1A-1, N.C. R.

Civ. P. 56(c) (2021). The movant bears "the burden of showing that there is no triable issue of fact and that he is entitled to judgment as a matter of law." *Ragland v. Moore*, 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980) (citation omitted). "All inferences of fact must be drawn against the movant and in favor of the nonmovant." *Lord v. Beerman*, 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008) (citation omitted).

Although "summary judgment is seldom appropriate in a negligence case, summary judgment may be granted in a negligence action where there are no genuine issues of material fact[,] and the plaintiff fails to show one of the elements of negligence." *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995) (citations omitted), *disc. rev. denied*, 342 N.C. 656, 467 S.E.2d 715 (1996); *see Croker v. Yadkin, Inc.*, 130 N.C. App. 64, 67, 502 S.E.2d 404, 406 (explaining summary judgment is appropriate when "it is shown the defendant had no duty of care to the plaintiff . . . ."), *disc. rev. denied*, 349 N.C. 355, 525 S.E.2d 449 (1998).

A trial court's grant of summary judgment is reviewed *de novo* on appeal. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App 561, 563, 668 S.E.2d 349, 351 (2008) (citation omitted). Under *de novo* review, this Court considers the matter "anew" without "deference to the trial court's rulings[.]" *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (citations omitted).

## II. Analysis

**A. Common Law Negligence**

¶ 51    First, the majority concludes there are genuine issues of material fact as to Plaintiff's common law negligence claim "because there was evidence that Defendant had constructive notice of the alleged hazardous condition and was negligent in failing to warn of or repair the condition." In support of this conclusion, the majority cites Defendant's knowledge of debris in Plaintiff's backyard. The majority also concludes that Defendant's failure to perform an inspection of Plaintiff's property during the lease period creates a question for the jury as to whether Defendant exercised reasonable care; however, no duty to inspect the interior of the private living space of a tenant exists in our common law negligence jurisprudence absent the landlord's knowledge of a dangerous condition. I further disagree that overgrown grass and debris in the backyard served to put Defendant on notice as to the dangerous conditions of the corroded natural gas pipe or plumbing above the furnace. There is no reasonable nexus between the innocuous conditions occurring in the backyard and the apparently dangerous and hidden conditions occurring in the crawlspace of the home. Defendant had no duty to inspect the property without being put on notice, or otherwise having reason to know, of a hazardous condition.

¶ 52    To establish a *prima facie* action for negligence at common law, a plaintiff must show: "(1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause

of the injury." *Collingwood v. Gen. Elec. Real Est. Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted). If no legal duty exists between a plaintiff and a defendant, there can be no liability. *Inman v. City of Whiteville*, 236 N.C. App. 301, 303, 763 S.E.2d 332, 333–34 (2014). Traditionally, North Carolina has considered a tenant to be an invitee of the landlord, and "the liability of a landlord for physical harm to its tenant depends on if it knows of the danger." *Prince v. Wright*, 141 N.C. App. 262, 271, 541 S.E.2d 191, 198 (2000) (citation omitted). Therefore, "[a] landlord owes a duty to an invitee to use reasonable care to keep the premises safe and *to warn of hidden dangers*, but he is not an insurer of the invitee's safety." *Id.* at 271, 541 S.E.2d at 198 (citation omitted and emphasis in original). Landlords owe a duty to make repairs and fix hazardous conditions "about which they kn[o]w or ha[ve] reason to know" exist. *Id.* at 271, 541 S.E.2d at 198; *see also Robinson v. Thomas*, 244 N.C. 732, 736–37, 94 S.E.2d 911, 915 (1956) (holding the landlord was not liable to the tenant for the tenant's injuries where the tenant complained of a crack in the floor but did not notify the landlord that the crack was dangerous); *Bradley v. Wachovia Bank & Trust Co., N.A.*, 90 N.C. App. 581, 585, 369 S.E.2d 86, 88 (1988) (holding landlord did not have a duty to tear down the walls of a rented house for purposes of inspection without notice of a hazardous condition). "If the landlord is without knowledge at the time of the letting of any dangerous defect in the premises, he is not responsible for any injuries which result from such defect." *Robinson*, 244

N.C. at 736, 94 S.E.2d at 914 (citation omitted).

¶ 53        Here, there is no evidence that Defendant was aware, or had reason to know, of a plumbing leak above the furnace or that the water leak caused the natural gas pipe to corrode. The liability of the landlord depends on whether the landlord knows of the danger, and in this case, Defendant did not know or have reason to know of the danger. *See Bradley*, 90 N.C. App. at 585, 369 S.E.2d at 88. Defendant did not have reason to know of the corroded pipe because he never received any complaint from Plaintiff about the gas heating system, nor did he know of any fire department or Public Service Company of North Carolina, Inc. ("PSNC") investigation into natural gas smells around the rental home. *See Robinson*, 244 N.C. at 736, 94 S.E.2d at 914.

¶ 54        It is noteworthy that Plaintiff did not plead that he informed or otherwise put Defendant on notice of the alleged defects and hazardous conditions. In fact, Plaintiff plead bare conclusory allegations in his complaint, not based upon information and belief, indicating Defendant "knew or should have known" that the water pipe was leaking on to the gas pipe. He further alleges the "defective conditions" were "known or *knowable*" by Defendant; however, this is not the standard used in North Carolina for establishing a duty on the part of a landlord. *See Prince*, 141 N.C. App. at 271, 541 S.E.2d at 198. Plaintiff provides no factual basis as to why Defendant would have known of the leak, nor did Plaintiff establish that Defendant was under a duty—recognized in this State—to inspect the property. Additionally, in Plaintiff's response

to Defendant's requests for admissions, Plaintiff contradicts the allegations in his complaint that Defendant "knew or should have known" of the dangerous conditions and admits Defendant's knowledge of the facts and circumstances leading up to the explosion were "unknown" to Plaintiff.

¶ 55        Finally, an inspection of the bathroom may have revealed the gas pipe's condition because in the light most favorable to the nonmovant, it was visible through a hole in the floor, but Defendant had no reason and no duty to conduct an inspection without knowledge of any possibly hazardous condition. *See Prince*, 141 N.C. App. at 271, 541 S.E.2d at 198. The record reveals Defendant regularly asked Plaintiff how things were at the rental home, and Plaintiff always told Defendant things were "fine."

¶ 56        Because there is no evidence Defendant had actual or constructive notice of the dangerous conditions, I conclude Defendant did not owe a duty to Plaintiff to warn of or correct the conditions. *See Prince*, 141 N.C. App. at 271, 541 S.E.2d at 198; *see also Robinson*, 244 N.C. at 736, 94 S.E.2d at 915. Accordingly, I would hold the trial court did not err in granting Defendant summary judgment on the common law negligence claim because Defendant did not owe Plaintiff a duty to repair or warn of dangers without actual or constructive knowledge that the defect existed. *See S.B. Simmons Landscaping & Excavating, Inc.*, 192 N.C. App. at 164, 665 S.E.2d at 152.

¶ 57        The majority is inventing a duty to inspect the interior living space of a tenant's

residential premises and placing that duty upon the landlord. This is an endeavor better suited for the Legislature. By creating this duty to inspect, there are many questions that will necessarily require an answer, including, but not limited to:

> (1) How often **must** the landlord inspect the interior living space of a tenant?;
>
> (2) How often **may** a landlord inspect the interior living space of a tenant?;
>
> (3) What is the scope of the inspection that **must** be conducted?;
>
> (4) What **may** be included in the inspection pursuant to the duty created by the majority?;
>
> (5) Who may conduct these inspections? Can the landlord delegate the duty to a property manager or other third party?;
>
> (6) Can a party authorized to inspect be joined by a law enforcement officer?;
>
> (7) Can the duty to inspect be delegated to law enforcement? (If so, the warrant requirement to enter one's home in the residential tenant setting is practically moot);
>
> (8) Does the duty to inspect apply to government-owned public housing?;
>
> (9) Does the duty to inspect apply to dorms and apartments owned by colleges and universities? If so, can campus police conduct the inspections?;
>
> (10) Can furniture be moved and closets, doors, and cabinets be opened during the inspection?

The duty to inspect created by this majority opinion falls outside the protections of our Constitution against unreasonable searches as the "inspections"

are judicially permitted and required, apparently without limitation.

**B. Violation of the RRAA**

¶ 59        Next, the majority concludes the trial court's grant of summary judgment on Plaintiff's claim for violation of the RRAA was in error because "Defendant failed to maintain the gas furnace and associated piping in a manner that was safe for tenant occupancy." I disagree with this conclusion because Plaintiff failed to show he complied with the statute by providing Defendant with written notice of the needed repairs.

¶ 60        The RRAA creates a statutory duty of care between landlords and their tenants and requires landlords to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." *Prince*, 141 N.C. App. at 270, 541 S.E.2d at 198 (quoting N.C. Gen. Stat. § 42-42(a)(2)). Under the RRAA, a landlord is required to "[m]aintain in good and safe working order and promptly repair . . . heating [units and other facilities] *provided that notification of needed repairs is made to the landlord in writing by the tenant*[.]" N.C. Gen. Stat. § 42-42(4) (2021) (emphasis added). The RRAA allows a tenant to recover rent based on "a landlord's breach of the implied warranty of habitability." *Stikeleather Realty & Invs. Co. v. Broadway*, 241 N.C. App. 152, 161, 772 S.E.2d 107, 114 (2015). "However, the statute requires that a landlord must have knowledge, actual or imputed, or be notified of a hazard's existence before being held liable in tort." *DiOrio v. Penny*, 331 N.C. 726, 729, 417

S.E.2d 457, 459 (1992) (citing N.C. Gen. Stat. § 42-42(a)(4)); s*ee also Stikeleather Realty & Inv. Co.*, 241 N.C. App. at 163, 772 S.E.2d at 115 (holding landlord was not liable for defective carbon monoxide detectors because landlord did not know, or have reason to know, they were not in working order).

¶ 61        Here, Plaintiff failed to forecast evidence showing Defendant received written notification from Plaintiff regarding the conditions of the gas furnace and related piping.  *See* N.C. Gen. Stat. § 42-42(a)(4).  To the contrary, the record reveals Defendant regularly asked Plaintiff how things were at the rental home, and Plaintiff always told Defendant things were "fine."  Therefore, I conclude Defendant did not violate the RRAA.  *See* N.C. Gen. Stat. § 42-42(4).  Accordingly, I would hold the trial court did not err in granting Defendant summary judgment on Plaintiff's RRAA claim.  *See S.B. Simmons Landscaping & Excavating, Inc.*, 192 N.C. App. at 164, 665 S.E.2d at 152.

**C. Negligence *Per Se***

¶ 62        Third, the majority concludes summary judgment in Defendant's favor was inappropriate because "a triable issue of material fact existed about whether Defendant violated the Housing Code."  The majority declined to extend the requirements for establishing violation of a state building code to that of a municipal housing code.  I conclude these conditions are equally applicable to building and housing codes.

To make out a *prima facie* claim for negligence *per se*, a plaintiff must establish:

> (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and (6) that the violation of the statute proximately caused the injury.

*Asher v. Huneycutt*, 2022-NCCOA-517, ¶ 22 (citation omitted). "The general rule in North Carolina is that the violation of a [public safety statute] constitutes negligence *per se*." *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006) (citation omitted). A public safety statute imposes a duty on a defendant for the protection of others. *Id.* at 326, 626 S.E.2d at 266. Violations of a housing or building code constitute negligence *per se* because both ordinances promote the safety of the public. *See Lassiter v. Cecil*, 145 N.C. App. 679, 684, 551 S.E.2d 220, 223 (2001).

Our Supreme Court has enumerated specific conditions, or elements, that must be satisfied for a building owner to be found negligent *per se* for a violation of the North Carolina Building Code: "(1) the owner knew or should have known of the Code violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation proximately caused injury or damage." *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 415, 395 S.E.2d 112, 114 (citing *Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 329, 363 S.E.2d 367, 375, *disc. rev. denied*, 321 N.C. 744, 366 S.E.2d 862 (1988)).

¶ 65 I disagree with the majority's refusal to conclude the specific conditions, or elements, that must be satisfied for an owner to be found negligent *per se* under the state building code do not equally apply to a municipal housing code violation. *See Olympic Products Co.*, 88 N.C. App. at 329, 363 S.E.2d at 375; *Lamm*, 327 N.C. at 415, 395 S.E.2d at 114. North Carolina law requires a landlord to "[c]omply with the current applicable building and housing codes . . . ." N.C. Gen. Stat. § 42-42(a)(1) (2021). The Legislature did not create separate duties for compliance with building and housing codes, and I can discern no logical reason why this Court should create separate duties where the Legislature has addressed the issue and chose not to do so. Therefore, the requirements for establishing negligence *per se*, set out by this Court in *Olympic Products* and cited by our Supreme Court in *Lamm*, should apply to building and housing codes alike.

¶ 66 In this case, Defendant cannot be found liable for negligence *per se* because the notice condition is not satisfied. *See Olympic Products Co.*, 88 N.C. App. at 329, 363 S.E.2d at 375; *Lamm*, 327 N.C. at 415, 395 S.E.2d at 114. Accordingly, I would hold the trial court did not err in granting Defendant summary judgment on the negligence *per se* claim. *See S.B. Simmons Landscaping & Excavating, Inc.*, 192 N.C. App. at 164, 665 S.E.2d at 152.

**D. Breach of Implied Warranty of Habitability**

¶ 67 Finally, the majority concludes the trial court erred in granting summary

judgment in favor of Defendant with respect to Plaintiff's breach of implied warranty of habitability claim "because there is evidence supporting Plaintiff's contention that the defective gas pipe was observable upon reasonable inspection by Defendant, and that it violated the Durham Housing Code." As discussed above, Defendant did not owe a duty to inspect the gas pipe without notice of its defective condition.

¶ 68    "Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with [N.C. Gen. Stat. §] 42-42(a)." *Surrat v. Newton*, 99 N.C. App. 396, 404, 393 S.E.2d 554, 558–59 (1990) (citation omitted). Our Court has stated that N.C. Gen. Stat. § 42-42(a)(4) "require[s] written notification of needed repairs involving electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord"; however, written notice is not required for "needed repairs if the repairs are necessary to put the premises in a fit and habitable condition or if the conditions constitute an emergency." *Id.* at 405, 393 S.E.2d at 559 (tenant established a *prima facie* case of breach of implied warrant of habitability and provided verbal notice to landlord of needed repairs). This does not obviate the requirement that a tenant must give notice to the landlord of the repair that is needed to put the premises in a fit and habitable condition. *See DiOrio*, 331 N.C. at 729, 417 S.E.2d at 459; *see also* N.C. Gen. Stat. § 42-42(a)(4).

¶ 69    The majority correctly states the RRAA imposes certain duties on landlords to provide "fit premises." The majority then concludes there was sufficient evidence "Defendant knew or had reason to know of any defect on the property" and thus violated N.C. Gen. Stat. § 42-42(a). Here, the record contains ample evidence that Plaintiff did not provide Defendant with notice of the issues with, or concerns about, hazardous conditions. Defendant did not have notice an inspection was warranted. *See Prince*, 141 N.C. App. at 271, 541 S.E.2d at 198. Therefore, Defendant cannot be liable for repairs of which he had no knowledge were needed. *See id.* at 271, 541 S.E.2d at 198. Accordingly, I would hold the trial court did not err in granting Defendant summary judgment on the breach of implied warranty of habitability claim. *See S.B. Simmons Landscaping & Excavating, Inc.*, 192 N.C. App. at 164, 665 S.E.2d at 152.

¶ 70    It appears the majority is judicially creating a duty of a landlord to inspect that is not established by statue or common law. Under the approach to this case taken by the majority, law enforcement could potentially partner with landlords "for safety and/or accountability purposes" to enter the homes of tenants to observe the inspections by a landlord which may reveal contraband. That "public service" provided by law enforcement may well result in many lawful seizures and arrests that would otherwise be unlawful or not permitted absent probable cause to enter the home. This newly created duty poses the risk of severely undermining the

constitutional protections of residential tenants, to the exclusion of those fortunate enough to own their homes, to be free from searches of their homes without probable cause and the issuance of a search warrant.

### III.    Conclusion

For the foregoing reasons, I disagree with the majority's conclusion that genuine issues of fact existed as to Plaintiff's four claims, and I respectfully dissent. I would hold the trial court did not err in granting Defendant's motion for summary judgment.  Accordingly, I would affirm the Order.